Shaw, C. J.
Two actions having been brought between these parties, in regard to the support of the same pauper, it is convenient to report them together. The first was brought to recover for expenses incurred for the support of John Swift, alleged by the plaintiffs to have his settlement in Wareham; such expenses having been incurred by the plaintiff town, by payment of the same to the State lunatic hospital. The action was commenced 15th January, 1850, on a claim for the support of said pauper, at the hospital, as an insane person, from 15th December, 1848, to the commencement of the action; and it alleges notice to the plaintiffs within three months from the time of incurring the expense. The case was tiled in the court of common pleas, for this county, at the October term, 1850, and a verdict returned for the plaintiffs ; and it comes before this court on exceptions taken by the defendants. It appears by the facts stated in the bill of exceptions, that the said John Swift was sent to said hospital by the overseers of the poor of Cummington, on the 2d December, 1844, without giving notice to the town of Wareham, and without any adjudication of any court or magistrate. It was admitted that the overseers of Cummington, on the 15th March, 1849, sent legal notice to the overseers of Wareham, as required in cases of paupers, and that on the 22d March, 1849, the latter sent a legal answer to the former, denying the settlement of said pauper in Wareham. It does not appear in this suit that any other notice was given; and it will be perceived *587 that though the pauper was sent to the hospital some years previous, the claim is limited to a period commencing three months next preceding the date of the above notice.
The question of settlement was left to the jury; but the defendants contended and requested the court to instruct the jury that even if the settlement of the pauper was in Ware-ham, this action could not be maintained, because there had been no such commitment of Swift to the hospital, as would make the defendants liable in this action. But the judge overruled the objection, and directed the jury, that if they should find the legal settlement of the pauper to be in Ware-ham, they should find for the plaintiffs, which they did. The question is upon the correctness of this direction.
The action is founded on St. 1841, c. 77, which provides, that whenever any lunaüc or insane person shall be committed to the State lunatic hospital, from any town in which he has not a legal settlement, and such town shall pay the expense of his support at the hospital, such town may recover from the town in which he has a legal settlement, the full amount of all the expense so paid.
The case of the plaintiff town is within the letter of the statute, if the sending of a lunatic pauper to the hospital by overseers, for relief and support, is a “commitment” within its meaning. But it is now insisted, as it was at the trial, that “ committed ” in this statute applies only to lunatics sent to the hospital by some court, magistrate or judicial authority, under various provisions of law.
As this transaction took place long after the revised statutes went into operation, and all the statutes on the subject which preceded them were repealed, we are to look to them for the law, and the antecedent statutes can be resorted to only for purposes of illustration and exposition.
By Rev. Sts. c. 48, § 8, it is provided that any lunatic supported as a towm pauper, may, with the .consent of the trustees, be committed to the hospital, by the overseers of his town, and shall be kept for a sum, &c. Here the act of sending the pauper to the hospital, by the overseers, is called a “ commitment.” “ His town ” in this clause is manifestly the town *588 where he is supported, whether that of his settlement or not, because towns are bound to support all paupers, sane or insane, being in distress and in need of immediate relief therein, whether they have a legal settlement in such town or not.
Here is an express provision, that in case of this dangerous class of paupers, towns may avail themselves of the ample and appropriate accommodations of the hospital, instead of their own, being liable for the expense as before. It is doubtful, whether by force of any provision of the revised statutes, the town incurring that expense, if not that of the pauper’s settlement, has a remedy even for reimbursement. By § 9, following the one last cited, it is provided that the expenses of the hospital for the support of lunatics committed by any court or judicial officers, or by virtue of the proclamation of the governor, shall be paid by the town of their “ settlement,” and it gives an action against such town, in the name of the treasurer of the hospital, to recover such expenses. This was manifestly a mistake, and we shall refer to it hereafter.
By the next succeeding section, it is provided that every town, paying expenses for the support of any lunatic under the provisions of the preceding section, shall have the like remedies, &c. This seems to limit the right of reimbursement from the town of settlement, to cases of expense of judicial commitment.
We have said that “settlement,” in § 9, was probably a mistake. It probably arose from the fact that the revised statutes embodied to some extent the provisions of two previous Sts. 1834, c. 150, § 7, and 1835, c. 129, § 2, some of which gave the hospital a remedy against the town of settlement, and others against the town of residence. But what proves it a mistake, is the St. 1837, c. 228, § 7, passed within a year after the revised statutes, in which it is enacted that the word “ settlement,” in the 9th section, shall be construed and taken to mean “ residence,” in all adjudications which shall be had thereon. But it further provides, that if it shall be made to appear that the lunatic had no settlement in the commonwealth, the town of his residence shall not be liable.
This renders the law harmonious and symmetrical in one *589 respect; it makes the place from which the lunatic was committed, which is usually a plain matter of fact easily proved, the test of the right of the hospital to recover their remuneration from such town, unless such town could show that the lunatic has no settlement in the commonwealth, in which case he must be a state pauper, and his support would ultimately rest on the State at whose expense the hospital is established and maintained.
This imposes no new burden upon the town, but merely changes its form. If the town of the lunatic’s residence is also the town of his settlement, the burden will rest where it falls; if he has no settlement there, it leaves upon such town the obligation of ascertaining and proving his settlement in some other town.
Still, however, the St. of 1837 corrected only the 9th section, giving a remedy in favor of the town of the lunatic’s residence, over against the town of his settlement, in cases of judicial commitments. Then came the statute of 1841, before cited, which is general in its terms, and applies to every species of commitment of lunatics to the hospital, by courts, magistrates, overseers of the poor, or others ; and so far as any argument can be drawn from the term “ committed,” we have seen that it is given by the statute to the act of the overseers, in sending a lunatic town pauper to the hospital, with the consent of the trustees. That the town of residence, if chargeable at all, should have a remedy for reimbursement from the town of settlement, is consistent with the whole spirit and policy of the poor laws, and the law of settlement. Any other rule of construction would impose a burden upon a town not hable, and exempt the town of settlement from a duty founded on a general principle. The court are therefore of opinion, that the defendant town is hable, that the direction was right, and that the plaintiffs are entitled to judgment on the verdict. Exceptions in the first case overruled.
At the September term, 1852, another suit between the same parties, for the support of the same lunatic, came before *590 the court, having been- commenced during the pendency of the former. In this action the plaintiffs claimed for all sums paid to the hospital from the first commitment of Swift, in 1844, to the time of bringing this second suit, December 31, 1851, deducting certain sums which had been allowed them by the commonwealth, and also deducting the amount recovered in 'the former suit, from December 15, 1848, to January 15,1850. It comes before the court upon an agreed statement of facts.
It is contended on the part of the plaintiffs, that the former recovery was no bar to an action for the support furnished previously to the time sued for in that action, that the account consists of items, each of which constitutes a distinct and separate cause of action. It appears by the agreed statement, that whilst the .former suit was pending, the plaintiffs moved for leave to file an amended count, extending their claim back to 1844, so as to cover the claim now made; but the court, though they granted time to file an amended count, refused to grant leave to enlarge the claim by extending it back to 1844, on the ground probably that it would introduce a new cause of action. It is quite certain therefore, that this anterior claim was not embraced in the former suit, nor proved on the trial. If it stood solely on the ground that the former recovery was a bar to the preceding claim, and up to the time of the commencement of that suit, we should be inclined , to the opinion that, not being an entire contract, and in no way embraced in that action, it was no bar. Badger v. Titcomb, 15 Pick. 409.
But the main ground relied on by the defendants is, that the action was not brought within two years from the time of the expense incurred as a condition precedent required by Rev Sts. c. 46, § 13, revising and reenacting St. 1793, c. 59, § 9, the long established law, regulating suits by one town against another. Uxbridge v. Seekonk, 10 Pick. 150; Hallowell v. Harwich, 14 Mass. 186.
It is urged however, on the part of the plaintiffs, that the former is in effect repealed by St. 1841, c. 77, by the provision that the town of a lunatic’s residence being obliged to pay the hospital, shall have a right to recover against the town of *591 his legal settlement, the full amount paid to the hospital. But the court are of opinion that the purpose of this act was to determine the measure of damages; the actual expense paid; instead of being limited to one dollar a week, as directed by Rev. Sts. c. 46, § 15. It was not to alter the time, within which the action shall be brought, or the length of time for which a town may recover. The former law in these respects remained in force, and therefore the court are of opinion that, for all sums incurred prior to the commencement of the former action, the plaintiffs cannot recover.
It remains to consider the claim for the period which elapsed between the commencement of the former suit, and the time of the commencement of this suit. This depends on different considerations. The law is very explicit that for every new action a new notice must be given, even though a former action between the same parties, for the support of the same pauper, is still pending. Sidney v. Augusta, 12 Mass. 316; Walpole v. Hopkinton, 4 Pick. 358; Uxbridge v. Seekonk, 10 Pick. 150.
We do not perceive any reason why the law in regard to the three months’ notice, and the recovery for two years only, does not apply as well where a town is chargeable for expenses incurred at the hospital, as to expenses incurred by the support of the pauper at home, unless indeed it be in fixing the three months in reference to the time of the expenses incurred. It was held in the case of Worcester v. Milford, 18 Pick. 379, that three months’ notice after the time of the expenses paid was sufficient. A doubt was suggested in that case whether any notice was necessary; but as to this, it must be considered that in that case the lunatic was committed not by the overseers of the town itself, but by a judicial act.
In the present case the court are of opinion that the town claiming reimbursement was bound to give notice to the town of settlement, that the pauper still lived and required support, and that the party claiming can only recover from a period computed from three months next preceding the notice given. It appears by the facts agreed, that notice was given December 9, 1850. We think therefore that the time, for *592 which alone the plaintiffs in this suit can recover, must be computed from September 9, 1850, three months before the notice, and continued down to the time of bringing this action, or the time when the defendant town assumed the charge of the pauper, whichever first occurred.

Judgment accordingly.