# Montour County *v.* Directors of the Poor of Danville & Mahoning Poor District, Appellant (No. 1).

*Poor law—Criminal lunatics—Maintenance—Liability of poor district—Acts of April 14, 1845, P. L. 440, March 27, 1873, P. L. 54, May 8, 1883, P. L. 21, June 25, 1895, P. L. 270, and June 26, 1895, P. L. 388.*

1. The Act of June 26, 1895, P. L. 388, entitled, "An Act to provide for the more immediate relief, care and support of indigent insane persons committed on criminal charges less than felony," and providing that the insane person shall be maintained at the expense of the county from which he is removed "until the proper legal settlement of such insane person can be ascertained and determined," is to be read in connection with the Act of June 25, 1895, P. L. 270, and earlier acts on the subject prescribing the mode of ascertaining and determining the legal settlement of the pauper and fixing the ultimate liability for his maintenance.

2. Under the act of June 26, 1895, the removal of an insane criminal to the state hospital with the approval of the court is a "commitment" within the meaning of the Act of June 25, 1895, P. L. 270, and the earlier laws on the subject.

3. An order of the court of quarter sessions under the act of June 26, 1895, placing an indigent insane criminal in a state hospital for the insane is not rendered nugatory by the fact that the court appointed two physicians to make an examination of the prisoner and certify as to his condition, and that the approval of the removal was expressed in the technical form of a commitment, so as to comply with the requirements of sec. 29 of the Act of May 8, 1883, P. L. 21.

4. An order under the act of June 26, 1895, removing an indigent insane person prior to his trial, to a state hospital for the insane, is not invalid because the proceeding for his removal was initiated by the petition of the district attorney without the apparent participation in it of the county commissioners. In such a case the acquiescence and ratification of the county commissioners will be presumed if they subsequently file a petition to determine the legal settlement of the pauper.

5. Under the Acts of April 14, 1845, P. L. 440, March 27, 1873, P. L. 54, and June 25, 1895, P. L. 270, the court of quarter sessions has power to ascertain and determine the place of legal settlement of an indigent insane person committed to the state hospital for the insane at Danville under the Act of June 26, 1895, P. L. 388. The court of quarter sessions also has power, after having ascertained the poor district in which the insane pauper had a legal settlement, to order such district to reimburse Montour county for the amount expended upon the pauper and

to direct and enforce the payment of such an amount. Davidson Township's App., 68 Pa. 312, followed.

*Appeals—Interlocutory order—Poor law—Indigent insane criminal.*

6. It seems that an order of the court of quarter sessions fixing the legal settlement of an indigent insane criminal who has been committed to a state hospital for the insane, and further directing the poor district of the settlement to reimburse the expenditures of Montour county incurred on behalf of the pauper, after the amount thereof has been approved by the court, is an interlocutory order from which an appeal should not be taken.

Argued March 4, 1911. Appeal, No. 11, March T., 1912, by defendant, from order of Q. S. Montour Co., Jan. T., 1910, No. 4, fixing settlement of pauper and directing payment for his maintenance. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Petition to determine settlement of Clarence Carr, an indigent insane criminal, and fix liability for the expenses of his maintenance at the state hospital for the insane at Danville.

The facts are stated in the opinion of the Superior Court.

The court of quarter sessions made the following order:

1. And now, April 8, 1911, rule absolute, and it is adjudged and decreed that the place of legal settlement of Clarence Carr at the time of his commitment to the county jail and hospital was in the Danville and Mahoning Poor District.

2. And it is further ordered, adjudged and decreed that the Danville and Mahoning Poor District reimburse the county of Montour for all lawful costs, charges and expenditures incurred on behalf of said Carr. Payment thereof to be made after an itemized memorandum of the same has been approved with notice, etc., by the court.

*Error assigned* was the order of the court.

*Wm. Kase West* and *C. R. Savidge,* for appellant.—Act of June 26, 1895, P. L. 388, under which court proceeded,

does not authorize commitment to hospital and commitment, therefore, void. It follows, therefore, that under this void commitment with no force and effect, because made without authority of law, there can be no certificate of settlement as per eleventh section of Act of April 14, 1845, P. L. 440.

Inasmuch as the act last mentioned is the only authority for certification of legal settlement and there is no law authorizing the court to order reimbursement or to direct time and manner of payment, so much of the decree as does this, which is as follows, to wit: "And it is further, ordered, adjudged and decreed that the Danville and Mahoning Poor District reimburse the county of Montour for all lawful costs, charges and expenditures incurred on behalf of said Carr. Payment thereof to be made after an itemized memorandum of the same has been approved, with notice, etc., by the court," is clearly error and calls for reversal.

In passing upon these questions, it should be remembered that statutory authority, either in express terms or by necessary implication, is required for all claims upon the public treasury: Cumberland County v. Mohler, 7 Pa. Superior Ct. 614; Brush Valley Twp. Poor Directors v. Allegheny County Poor Directors, 25 Pa. Superior Ct. 595.

*Ralph Kisner* and *James Scarlet*, for appellee, cited: Juniata County v. Poor Overseers, 22 Pa. Superior Ct. 187.

OPINION BY RICE, P. J., July 18, 1912:

The nature of the proceedings brought up for review and the facts necessary to an understanding of the questions involved are clearly set forth in the opinion and final order of the learned judge below, and need not be restated by us.

The Act of June 26, 1895, P. L. 388, entitled "An Act to provide for the more immediate relief, care and support

of indigent insane persons committed on criminal charges less than felony," provides, that the insane person placed in a hospital for the insane pursuant to its provisions shall there be maintained at the expense of the county from which he is removed "until the proper legal settlement of such insane person can be ascertained and determined." There are many acts of assembly relating to the care and maintenance of the indigent and criminal insane in state hospitals for the insane, and to the ultimate liability of relatives and poor districts therefor. And having regard to the general principles enunciated and applied in Boyle's Lunacy, 20 Pa. Superior Ct. 1, and Juniata County v. Overseers of Mifflintown, 22 Pa. Superior Ct. 187, this act is to be considered as forming a part of the same general system. Therefore, in construing it, the familiar principle is to be borne in mind, that where there are several acts relating to the same subject, the survey must extend to them, for each of them may explain and elucidate every other part of the common system to which it belongs. The rule requiring the interpretation of a statute in the light of and with reference to others in pari materia has a peculiarly appropriate application to acts upon such kindred subjects passed at the same session of the legislature. Viewing the act of June 26, 1895, in the light of other acts relating to the same subject, it is quite clear that the words we have quoted from it cannot be construed to imply that when his legal settlement is ascertained and determined the insane person shall be forthwith discharged from the custody of the hospital authorities, or that thereupon the obligation of the county primarily to pay to the hospital authorities the expense of his maintenance "as indigent insane persons are now kept and supported," shall cease, or that for the expense up to that time or afterwards, which the county has paid or become primarily liable for, it shall have no recourse over against the poor district ascertained and determined to be the proper legal settlement. The words plainly show that the legislature contemplated the ascertainment

and determination of the proper legal settlement, but what its purpose was in introducing that provision, unless it had in view the fixing of ultimate liability, we cannot discover. To give the words effect, as we are bound to do, if possible, and thus carry out the whole intent of the legislature, recourse must be had to other acts prescribing the mode of ascertaining and determining the legal settlement and fixing ultimate liability, if such acts or act there be. By the act to define "who shall be responsible for the maintenance of patients placed in hospitals for the insane by courts and judges," which was passed at the same session (Act of June 25, 1895, P. L. 270), the legislature had provided as follows: "That where any person is or shall be committed to the care and custody of any hospital for the insane by any court or judge in any county, in pursuance of the laws of this commonwealth, the county from which said person has been sent or committed to said hospital shall be liable to said hospital for his or her maintenance therein, and the expenses connected therewith; Provided, That said county shall, in all cases, have full recourse to recover all expenses incurred in behalf of said person so committed, from the parties or persons or poor district properly chargeable therewith under the laws of this commonwealth." It is suggested, as one reason why this act does not apply to the case of a person placed in the hospital pursuant to the act of June 26, that, if we correctly understand counsel, such person is not "committed" by the court or judge, but is simply removed to the hospital by the county commissioners for temporary detention, and the single function of the court or judge is to approve of such removal. This involves a very narrow and illiberal construction of these acts, whereas, both being remedial in their nature, and the latter in its expressed purpose as well, they are entitled to a liberal construction. It is to be noticed that the words of the title of the act of June 25 are, "placed in hospitals for the insane by courts or judges," and in the body of the act appear the words, "sent or committed to

said hospital," thus indicating that the legislature had in mind the effect of the action of the court, rather than its technical form. Again, the act of June 26 makes it mandatory upon the county commissioners to remove the person to the hospital when the court or judge approves. It is such approval that gives legal efficacy to the removal of the person from the jail to the hospital. It operates as a command, if other conditions have been complied with, and is, in legal effect, equal to a commitment. See Cummington v. Wareham, 63 Mass. 585, where it was held that the sending of a lunatic pauper to the hospital for relief and support was a "commitment," within the meaning of the statute. This interpretation brings the act into harmony with the general system of laws relating to the subject, and we entertain no doubt that it is in accordance with the broad general intent of the legislature; nor are we persuaded that it does violence to the language used. It follows that the act of June 25 applies to the case of a person placed in the hospital pursuant to the act of June 26.

But it is argued that the proceeding under which Clarence Carr was placed in the hospital was irregular and of no effect, at least so far as imposition of liability for his support and maintenance upon the defendant poor district is concerned, because (1) the court issued a commitment, which the act of June 26 gave it no authority to do; (2) the court appointed the physicians to make an examination, which likewise was without authority; (3) the proceeding was initiated by the petition of the district attorney, and it does not affirmatively appear that the county commissioners participated in it in any way. With regard to the first two objections, it seems sufficient to say that the certificate of the two physicians, which was in exact accordance with the requirements of the act of June 26, was not rendered nugatory by the fact that the court designated them, and that the approval by the court of the removal was none the less efficacious because it was expressed in the technical form of a commit-

ment, so as to comply with the requirements of sec. 29 of the Act of May 8, 1883, P. L. 21. As to the third objection, the learned judge says: "Carr was committed to the county jail October 18, 1909, charged with crime. Before his trial could be had in the orderly procedure of the business of the court it was believed that he was insane. The initiative was then by the district attorney presumably at the suggestion of the county commissioners, for at the time Carr was in jail awaiting the disposition of the charge preferred against him, at the expense of the county." We cannot say that this is an unwarrantable presumption to be applied in the collateral proceeding out of which this appeal arises. At any rate, the acquiescence and ratification of the county commissioners are to be presumed from their petition to determine the legal settlement.

The remaining questions to be considered are as to the power of the court of quarter sessions (1) to ascertain and determine the place of legal settlement, and (2) to order reimbursement for the amount of the indebtedness, and direct and enforce payment. As to the first question, there is no difficulty under the foregoing interpretation of the act of June 26. Section 11 of the Act of April 14, 1845, P. L. 440, which was extended to the state hospital for the insane at Danville by the Act of March 27, 1873, P. L. 54, makes it the duty of the courts, in all cases where they shall commit any person to the hospital, to certify to the trustees the legal settlement of such person, and expressly declares that the poor district so certified shall be chargeable with the expenses of his care, maintenance, and removal, provided that the settlement shall not be so certified until after due notice shall have been given to the constituted authorities having charge of the poor in the district to be charged. This is an adjudication, if the act be followed, and a conclusive one in determining who are the local authorities that are to pay for the maintenance: Franklin Twp. v. Pa. State Lunatic Hospital, 30 Pa. 522; Danville and Mahoning Poor Dist.

v. Montour County, 75 Pa. 35. But commitment to the hospital and certifying the legal settlement may be by distinct actions by the court, and the latter need not be taken at the time of the former: Clearfield County v. Cameron Twp. Poor Dist., 135 Pa. 86. So far, then, as the order appealed from adjudged and decreed that the place of legal settlement of Clarence Carr, at the time of his commitment to the county jail and hospital, was in Danville and Mahoning Poor District, it was clearly right and within the power of the court, in view of the admitted fact that such was his legal settlement. As to the power of the quarter sessions to ascertain and determine the amount of expenses incurred by the county in behalf of the person so committed to the hospital for the insane, and to direct and enforce reimbursement by the poor district, there is more room for argument. But we are constrained to the conclusion that the case of Davidson Township's Appeal, 68 Pa. 312, is an authority upon that question which cannot be ignored, and which, if followed, sustains the action of the court in this regard. Com. v. Darr, 11 Pa. Superior Ct. 74; Com. v. Burton, 16 Pa. Superior Ct. 218, and Boyle's Lunacy, 20 Pa. Superior Ct. 1, while not so directly in point, nevertheless tend to give support to the same conclusion. It is true, it was held in Danville and Mahoning Poor Dist. v. Montour County, 75 Pa. 35, reversing the court below upon that ground, that an action of assumpsit will lie, and there are some expressions in the opinion of the court which may be regarded as intimating a doubt, at least, as to the power of the court of quarter sessions to order reimbursement. But the latter proposition was not necessarily involved in the determination of the first question, and, therefore, the case cannot be regarded as overruling Davidson Township's Appeal, 68 Pa. 312; and it is to be observed that upon any question whatever before this court "the decision of the supreme court shall be received and followed as of binding authority:" Act of June 24, 1895, P. L. 212. We fail to see how a ruling that the court had not juris-

diction to make the order as to reimbursement, in this case, could be reconciled with the decision in Davidson Township's Appeal.

The order appealed from evidently contemplates something more to be done before it will become a final order or judgment, and, therefore, there is ground for question whether it is not an interlocutory order from which no appeal lies. But as this question was not suggested by court or counsel on the argument of the case, we conclude to express no more decided opinion upon it, but at the same time we think it well to remark that the case is not to be regarded as a controlling precedent upon that question.

The order is affirmed at the costs of the appellant, and the record is remitted with a procedendo.