Danville State Hospital for the Insane, Appellant, *v.* Bellefonte Borough Overseers of the Poor.

|163  175|
|177  117|
| 163      175|
| 27 SC  232|

[Marked to be reported.]

*Poor laws—Insane paupers—State hospital—Statutes—Implied repeal—Acts of April 14, 1845; April 8, 1861; March 27, 1873.*

Under the act of March 27, 1873, P. L. 54, constituting the State Hospital for the Insane at Danville, and extending to it §§ 8 to 15, inclusive, of the act of April 14, 1845, P. L. 440, and §§ 1 to 5, inclusive, of the act of April 8, 1861, P. L. 248, the hospital may recover for the support of an insane pauper either from the city or county from which the pauper was sent, or from the township.

The 4th section of the act of April 8, 1861, P. L. 248, giving a remedy against the city or county with a remedy over by the city or county against the township, is not inconsistent with the remedy given by the 12th and 13th sections of the act of April 14, 1845, P. L. 440, against the township directly.

So far as the State Hospital for the Insane is concerned it never had either remedy prior to the passage of the act of 1873, and it acquired them both at the same moment. It is impossible to say therefore that either one was intended to be repealed or substituted by the other. The consequence is that it must be concluded that it was the legislative intent to confer both remedies at the same moment and by the same enactment, and that they should be regarded as concurrent and cumulative and not as conflicting, or one as exclusive of the other.

*Action by state·hospital—Evidence—Order of relief—Condition precedent —Defence.*

In an action by the State Hospital for the Insane against a poor district to recover amounts expended in the maintenance of insane paupers, the plaintiff is not bound to show affirmatively that an order of relief or approval had been obtained, as a condition precedent to recovery.

The poor district is bound by the acts of its overseers, and cannot, after having received all the benefit of the relief and support furnished by the plaintiff, be heard to say that their own legally constituted officials omitted to comply with some legal requirement in acquiring jurisdiction of the paupers in the first instance.

Argued April 19, 1894. Appeal, No. 474, Jan. T., 1894, by plaintiff, from judgment of C. P. Centre Co., Aug. T., 1892, No. 65, for defendant, non obstante veredicto. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Reversed.

Assumpsit for maintenance of insane paupers. Before FURST, P. J.

The facts appear by the opinion of the Supreme Court.

At the trial the court instructed the jury to return a verdict for plaintiff subject to the question of law reserved whether there was any evidence upon which plaintiff was entitled to recover. Verdict for plaintiff. The court entered judgment for defendant non obstante veredicto, on the ground that no order of relief had been obtained, citing Poor Directors v. Worthington, 38 Pa. 160; Overseers v. Bunn, 12 S. & R. 292; South Huntingdon Overseers v. West Huntingdon Overseers, 7 Watts, 527; Directors v. Wallace, 8 W. & S. 94; Directors v. Murray, 32 Pa. 178; Overseers v. Baker's Ex'rs, 2 Watts, 280; Gibson v. Poor Dist., 122 Pa. 557; Wertz v. Blair Co., 66 Pa. 18.

*Error assigned* was entry of judgment as above.

*James A. Beaver, John M. Dale* with him, for appellants.— Where acts are of an official nature or require the concurrence of official persons, a presumption arises in favor of their due execution. · It has been said on such occasions omnia præsumuntur rite esse acta: Rex v. Catesby, 2 B. & C. 820; Rex v. Whitchurch, 7 B. &. C. 573; Com. ex rel. Bowman v. Slifer,

25 Pa. 29; Hartwell v. Root, 10 Am. Dec. 233; Farr v. Sims, 24 Am. Dec. 396; Squier v. Stockton, 52 Am. Dec. 583; Dubuc v. Voss, 92 Am. Dec. 526.

*Wilbur F. Reeder*, for appellee.—The hospital cannot recover against the poor district, because, under the act of 1861, a special statutory remedy is provided, which must be pursued. This remedy is exclusive of every other remedy. Plaintiff, therefore, could only recover against the county of Centre, and could under no circumstances recover against the overseers of the poor of the poor district of the borough of Bellefonte: Penna. State Lunatic Hospital v. Wayne Co., 2 Pearson, 83; Danville & Mahoning Poor District v. Montour Co., 75 Pa. 35; Wimer v. Worth Twp. Overseers, 104 Pa. 317.

*James A. Beaver, Jno. M. Dale* with him, for appellant, in reply.—The act of 1861 is not mandatory. It simply provides that "it shall be lawful" for the hospital authorities to act in the manner indicated, and does not require them to do so, nor does the act of 1861 repeal the 12th and 13th sections of the act of 1845, which by the provisions of the act of March 27, 1873, is extended to the hospital at Danville.

The case of Hospital v. Wayne Co., 2 Pearson, 83, was a case stated to determine whether or not the county was liable under the act of 1861. There is no question whatever but that the decision of the court was correct and that the county was liable, because the hospital had chosen the remedy provided by the act of 1861 instead of pursuing the remedy provided by the act of 1845.

The case of Poor District v. Montour Co., 75 Pa. 35, was a case in which the insane pauper was committed to the asylum by a decree of the court, in accordance with the statute providing for such commitment. That act provides for notice to the poor district, in order that the question of settlement may be definitely fixed. It has no reference whatever to a case in which the poor district itself, under the direction of its overseers, sends a pauper to the asylum, in accordance with the provisions of the act of 1845.

OPINION BY MR. JUSTICE GREEN, July 12, 1894:

The plaintiff was constituted by an act passed March 27,

1873, P. L. 54, and its powers and authority were defined by extending to it the sections eight to fifteen, inclusive, of the act of April 14, 1845, P. L. 440, entitled an act to establish an asylum for the insane poor of this commonwealth to be called the Pennsylvania State Lunatic Hospital and Union Asylum for the Insane; and also the sections from one to five inclusive of a supplement to said act, passed the eighth day of April, 1861, P. L. 248.

By the twelfth section of the first of these acts it was enacted, " That the several constituted authorities, having care and charge of the poor in the respective counties, districts and townships of this commonwealth, shall have authority to send to the asylum such insane paupers under their charge as they may deem proper subjects ; and they shall be severally chargeable with the expenses of the care and maintenance, and removal to and from the asylum, of such paupers."

It cannot be doubted that, under the provisions of this section, it was entirely competent for the overseers of a poor district to send to the asylum such insane paupers under their charge as they might deem proper subjects, and that the district would be responsible for the expenses of the care and maintenance of such paupers. The 13th section of the act provided that if the overseers or directors did not pay the expenses of the care and maintenance of the paupers, the trustees of the asylum might recover the same as debts of like nature are collected.

It is contended for the appellee that the fourth section of the act of 1861 gave a different remedy for such care and maintenance, and therefore the remedy given by the twelfth and thirteenth sections of the act of 1845 was no longer in force, and there could be no right of action against the poor district.

The fourth section of the act of 1861 is in these words: " That whenever an indigent insane person shall hereafter be sent to said hospital, the city or county from which he or she was sent shall be liable to the trustees of the hospital for his or her maintenance, and shall have remedy over against the proper township, where by existing laws the township is liable for the support of such pauper, and the overseers of the poor of such township shall have remedy over against the property of the pauper, or against any relative required by law to main-

tain him or her, to the extent of their liability under the poor laws."

It is argued for the appellant that this remedy is exclusive and no other remedy can be pursued. We cannot assent to this contention, for several reasons. It will be observed that the same act of 1873, which gives the remedy against the poor district by the twelfth section of the act of 1845, creates also a liability on the part of the city or county from which the pauper was sent. It cannot be said therefore that the legislature intended to give two inconsistent remedies by one and the same act, and that one of the said remedies being given operates as a repeal of the other. While it is true the act of 1861 was passed after the act of 1845, neither of them was applicable to this plaintiff except by the act of 1873, and by that act both remedies were given at the same instant, and by the same legislative breath. So far as this plaintiff is concerned it never had either remedy prior to the passage of the act of 1873 and it acquired them both at the same moment. It is impossible to say therefore that either one was intended to be repealed or substituted by the other. The consequence is that we must conclude that it was the legislative intent to confer both remedies at the same moment and by the same enactment, and that they should be regarded as concurrent and cumulative and not as conflicting, or the one as exclusive of the other.

That this is the proper construction of the act of 1873 is manifest from other considerations. It will be observed that the fourth section of the act of 1861 merely provides that the city or county shall be liable to the trustees of the hospital, but immediately adds that the city or county shall have remedy over against the township. It is certain therefore that it was not intended to take away the liability of the township, and to substitute that of the city or county, because it is especially provided that the liability of the township shall remain, and may be enforced by the city or county. The legal effect of this is that there is no ultimate liability of the city or county, but only of the township. The whole effect of the legislation therefore is, that, so far as the trustees of the asylum are concerned, they have a remedy against the city or county, as well as against the township. The township is liable in any event, for the city or county, paying the asylum's claim for care and

maintenance, can collect it from the townships. We see nothing inconsistent in the two acts of 1845 and 1861 in this respect. The two can stand together perfectly so far as this subject is concerned, and as there is no repealing clause in the act of 1861, and nothing but the giving of an additional remedy to the asylum, it may avail itself of either at its own discretion. The fifth section of the act of 1861 recognizes fully the concurrence of the two remedies, by providing that in all cases where money is due to the hospital by any township or county, on account of the maintenance of any person sent there by the proper authorities, and no suit for the recovery thereof is pending, the treasurer of the hospital may send a statement of the account with notice of the amount claimed, to be served on the commissioners of the county, or the overseers of the township, and if the same is not paid within thirty days, they can place the claim in the hands of the attorney general, who may bring suit in the county of Dauphin for the recovery of the amount due, and proceed to the collection of the same. The right to collect claims either against the township or the county is here fully recognized.

The cases of Danville, etc., Poor District v. Montour, 75 Pa. 35, and Wimer v. The Overseers of North Twp., 104 Pa. 317, are cited as in hostility with the foregoing principles, but it is a mistake; they do not contain any such doctrine. No such question was raised in either of them. The first of these cases arose under other provisions of the acts of 1845 and 1861, regarding the commitment of persons found to be insane, upon trials in the criminal courts, as to whom there is only the special remedy provided by the acts, which of course must be strictly followed. The second case arose upon a contract made by the overseers with another person, who agreed to pay a specific sum for the support of a pauper, and who actually did pay all the expenses, but the overseers sought to compel him to pay the whole amount of the contract, which was in excess of the amount actually required, and this court held that the contract was ultra vires as to the excess, and could not be enforced.

The case was decided by the learned court below upon the ground that it was not affirmatively proved that the insane paupers in question were under the charge of the overseers by virtue of an order of relief, or a subsequent order of approval,

and therefore there could be no recovery. In other words the plaintiff was bound to prove, not only that the paupers were sent, or delivered to them by the overseers, to be cared for and maintained, but also that, as between the overseers and the poor district, they had the paupers in charge by means of an order of relief, or a subsequent order of approval. If this be so it is difficult to see why a merchant who sold the overseers food, clothing or other necessaries, for the use of the paupers, should not be required to prove, in an action to recover the value of the goods, that all the paupers for whose use the goods were purchased and used, were under the charge of the overseers under orders of relief or approval regularly issued by competent authorities.

The direct question does not appear to have been before this court heretofore, but we think there is a manifest difference between the cases cited by the learned judge of the common pleas in his opinion, and this case. Those decisions were all instances in which there was no action, official or otherwise, by the overseers, but were claims by individuals for services rendered, or necessaries furnished, without any action by the overseers and without any previous order of relief. In some of them the pauper died before any order of approval was obtained, and yet the district was held liable, as in Directors of the Poor v. Wallace, 8 W. & S. 94, where we held that the directors were liable to pay the funeral expenses of the pauper, though no order of relief was issued, and only a certificate by two magistrates was granted after the death of the pauper stating his destitute condition and approving the plaintiff's expenditure.

In Poor Directors v. Worthington, 38 Pa. 160, the claim was by a physician for services in amputating the arm of a person who was injured in a railroad accident. He was held entitled to recover, upon proving that he was a poor person, though he never was in charge of the overseers, no order of relief had been obtained, and no order of approval was granted until more than two years after the accident. In these and similar cases the liability of the district was placed upon the ground of emergency, and also upon the general ground that the district is subject to a legal duty to provide for the care and maintenance of its poor persons and for the payment of their funeral expenses.

But in the present case the question is quite different. By the twelfth section of the act of 1845 the "several constituted authorities having care and charge of the poor in the respective counties, districts and townships," have authority to send to the asylum such insane paupers under their charge as they may deem proper subjects; and upon their doing so the several counties, districts or townships are made "chargeable with the expenses of the care, and maintenance, and removal to and from the asylum, of such paupers." In other words the occasion of liability of the district, is the action of the overseers. They are the "constituted authorities" who have the legal right to act, and, when they act, to obligate the district. The words "having care and charge of the poor," are mere words of description of the officials, indicating their personality by a generic description of their duties. And so, in describing the persons whom they may send to the asylum, the act says, "such insane persons under their charge, as they may deem proper subjects;" and it is they, the officials, the overseers, who are to decide, as between them and the asylum, what persons they regard as insane persons under their charge. This is an official function which they alone are authorized to discharge. If they are guilty of any dereliction of duty they may be answerable as for a breach of duty to the district which they officially represent. But as to other persons having dealings with them within the time or scope of their authority, surely it cannot be required that they shall be obliged first to institute an inquiry into the regularity of the official action of these "constituted authorities," before they may contract with them. In this particular case there is no question, indeed it is affirmatively proved and is not disputed, that the officials who placed these insane paupers in the asylum were the regularly "constituted authorities," for this purpose, of Bellefonte borough. They were the overseers of the poor of Bellefonte borough, both de facto et de jure, and, as such, were the only persons who could act in the matter in question. Upon the most familiar principles applicable to the acts of such officials, they and the principals they represent, are bound by their action. In Com'th v. Slifer, 25 Pa. 23, we said, speaking of one who was an officer de facto but not de jure: "He was merely the officer de facto. His acts are good so far as others are concerned."

At least three perfectly well established legal principles are applicable to the case, all of which are fatal to the defence. (1) The insane poor persons in question were placed in the asylum by the regularly constituted authorities of the poor district of Bellefonte acting within the scope of their authority, and holding their office de facto and de jure, and therefore the district is bound. (2) The maxim omnia præsumuntur rite esse acta requires that their acts are presumed to be rightly done, without specific proof to that effect. And (3) estoppel. The persons who placed these insane poor persons in charge of the plaintiff, are the same official persons as the present overseers, and cannot be heard to aver that when they delivered them to the plaintiff they were acting without proper authority. Whether they are the same individual persons matters not, they were the same official persons, and by their acts the district is bound.

In Com'th v. Slifer, supra, LEWIS, C. J., said : " But the acts of public officers, where the rights of the public require it, should be construed with liberality. There is always a presumption that they are in accordance with the law. The presumption can be repelled only by clear evidence of illegality. " But here there was no illegality as between the defendant poor district and the plaintiff insane hospital. As to the plaintiff the overseers of the district had the lawful right to place with the plaintiff such insane paupers as they might deem proper subjects. In the exercise of that right the overseers placed these three insane paupers in charge of the plaintiff, and in at least two of the cases they gave bonds for the payment of specific weekly sums for their maintenance and support. There was no serious question on the trial as to the fact of insanity, or the fact of pauperism, and no question whatever as to the correctness of the amount claimed. The verdict of the jury must be taken to have settled the facts of poverty and insanity, and the only question reserved by the court below was as to the necessity of there being proof in the case of an order of relief or an order of approval. But that question could affect only the regularity of the preliminary proceedings, and we are of opinion that as against this plaintiff, the district was bound by the act of its overseers, and cannot now, after having received all the benefit of the relief and support furnished

by the plaintiff, be heard to say that their own legally consti-
tuted officials omitted to comply with some legal requirement
in acquiring jurisdiction of the paupers, in the first instance.
When the district, through its overseers, placed these paupers
with the plaintiff, they must be deemed to have asserted that
the paupers were what the overseers claimed them to be. It
is too late and it would be too unjust to permit them to assert
the contrary now.

The judgment of the court below is reversed and judgment is
now entered on the verdict in favor of the plaintiff and against
the defendant for the sum of eight hundred and forty-three $\frac{84}{100}$
dollars as of December 9, 1893, with costs.