# Commonwealth *v.* Frederick, Appellant.

*Criminal law—Animals—Killing dog—Willful act—Act of April 24, 1903, P. L. 296—Malice—Acts of June 27, 1883, P. L. 163, June 4, 1897, P. L. 123, and March 11, 1903, P. L. 24—Forestry officer.*

The word "willfully" in the Act of April 24, 1903, P. L. 296, relating to the killing of domestic animals is synonymous with the word "intentionally."

Where an officer employed by the commissioner of forestry under the Act of March 11, 1903, P. L. 24, is indicted for willfully and maliciously killing a dog, and the evidence shows that the defendant had heard of the character of the dog as a deer dog, and that the dog was killed three miles from his master's residence, and when not in company with his master, it is error for the trial court to place upon the defendant the burden of disproving malice. The defendant in such a case is entitled to start with the presumption in his favor that his act was legal rather than illegal.

Argued Oct. 5, 1904. Appeal, No. 34, Jan. T. 1905, by defendant, from judgment of Q. S. Monroe Co., May T., 1904, No. 12, on verdict of guilty in case of Commonwealth v. Charles Frederick. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER and MORRISON, JJ. Reversed.

Indictment for killing a dog. Before STAPLES, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty upon which judgment of sentence was passed.

*Error assigned* among others was portion of charge quoted in the opinion of the Superior Court.

*W. B. Eilenberger,* with him *Harvey Huffman,* for appellant. —The burden of proof was on the prosecution to show that the defendant did not act willfully and maliciously: Conroy v. Pittsburg Times, 139 Pa. 334; Com. v. Gerade, 145 Pa. 289; Turner v. Com., 86 Pa. 54.

The very gist of the commonwealth's case is the willfulness and maliciousness: Commonwealth v. Drass, 146 Pa. 55.

The question of intent can never be ruled as a question of law but must be submitted to the jury and in case no criminal intent is found to have existed there must be an acquittal: People v. Flack, 11 L. R. A. 807; Folwell v. State, 5 Cent. Repr. 353; Com. v. Shaw, 48 Mass. 52; People v. Scott, 6 Mich. 287; Trumble v. Territory of Wyoming, 6 L. R. A. 384.

The law presumes that when an officer has acted within the general scope of his authority that his act is regular and lawful. A peace officer making an arrest upon reasonable suspicion of felony would be excused even though it appears afterwards that in fact no felony had been committed: McCarthy v. De-Armit, 99 Pa. 63; Fry v. Wolf, 8 Pa. Superior Ct. 468.

*Cicero Gearhart,* district attorney, with him *Wilton A. Erdman,* for appellee, cited: Com. v. Gentry, 5 Pa. Dist. Rep. 703; Com. v. Zelt, 138 Pa. 615; Rudy v. Com., 128 Pa. 500.

OPINION BY BEAVER, J., January 17, 1905:

Defendant was indicted for the killing of a dog, under the provisions of the Act of April 24, 1903, P. L. 296, in which the dog is added to domestic animals, the killing or maiming, etc., of which is made a misdemeanor under section 154 of our penal code and provides:

" Every person who shall willfully and maliciously kill, maim or disfigure any horse, cattle, dog or other domestic animals of another person; who shall willfully and maliciously administer poison to any such beasts, or expose any poisonous substance, with the intent that the same shall be taken or swallowed by them, shall be guilty of a misdemeanor; and being thereof convicted, shall be sentenced to pay a fine not exceeding $500

or undergo an imprisonment, by separate or solitary confinement at labor, not exceeding three years, or either or both, at the discretion of the court; provided that the provisions of this act shall not apply to the killing of any animal taken or found in the act of actually destroying any other domestic animal."

None of the assignments of error needs special discussion, except those which lead to the interpretation put upon the word " willfully " by the court and the instructions to the jury in regard to the inference of malice to be drawn from the mere fact of the killing.

1. The points for charge were not read but there is a general answer to them all in the charge of the court, in which it was said: " The defendant in this case has admitted that he killed this dog, so the only question for you to consider is whether or not the defendant willfully and maliciously killed this dog. The court is of the opinion under the evidence that there is no question that he willfully killed the dog. He intended to kill it when he did, he intended to kill it as Joseph Dippree's dog." The court, therefore, used the word " willfully " as synonymous with intentionally, and this would seem to be the interpretation placed upon it in Pennsylvania, although a different one has been applied in other jurisdictions, notably in Massachusetts (Com. v. Kneeland, 37 Mass. 206, 220). In Com. v. Drum, 58 Pa. 9, Mr. Justice Agnew, presiding at the trial, said, if " an intention to kill exists, it is willful." This, it is true was said in a trial for a homicide but would seem to be of general application.

2. The court, in the charge to the jury, said: " The other essential for you to consider is whether or not he also killed it maliciously. There being no dispute under the evidence that the defendant killed the dog, the court holds that the burden of proof is upon him to show that he did not kill it willfully and maliciously. From the fact of his killing the dog malice can be inferred, and it is incumbent upon him to satisfy you reasonably that he did not do it maliciously." Was this correct? It is the serious question in the case.

By the Act of June 27, 1883, P. L. 163, it is provided: " That any dogs pursuing elk or wild deer or fawns may be killed by any person, and constable or other town official may

kill any dogs that habitually pursue elk, wild deer or fawns and the owner of such dog shall be liable to a penalty of ten dollars for each elk, wild deer or fawn killed by such dog." Under the fourth section of the Act of June 4, 1897, P. L. 123, it is provided that " No person shall catch, take or kill in this commonwealth or, except as hereinafter provided, have in his or her possession, or under his or her control, after the same shall have been so killed, any elk, deer or fawn save during the month of November in each year. No person or persons shall at any time kill or capture any deer in the waters of any (of) the streams, ponds or lakes within the state. No person or persons shall make use of dog or dogs in hunting any elk, deer or fawn within this state. Whoever shall offend against any of the provisions of this section shall be liable to a penalty of one hundred dollars for each offense so committed, or by imprisonment in the county jail for a period of one day for each dollar of penalty imposed. Any dog or dogs pursuing or killing any elk, deer or fawn or following upon the track of any elk, deer or fawn are hereby declared a public nuisance, and may be killed by any person when so seen, and the owner of such dog or dogs shall have no recourse at law whatever."

The defendant was, according to the undisputed evidence, a sworn officer under the Act of March 11, 1903, P. L. 24, " Conferring upon persons employed, under existing laws, by the commissioner of forestry, for the protection of state forestry reservations, after taking the proper oath of office, the same powers as are by law conferred upon constables and other peace officers ; to arrest, without first procuring a warrant, persons reasonably suspected by them of offending against the laws protecting timber lands ; also, conferring upon them similar powers for the enforcement of the laws and rules and regulations for the protection of the state forestry reservations and for the protection of the game and fish contained therein ; and further, conferring upon them power to convey said offenders into the proper legal custody for punishment; this act to apply only to offenses committed upon said reservations and lands adjacent thereto."

The presumption arises in civil cases that an officer acting within the scope of his official authority does so in the dis-

charge of an official duty. It was said in Commonwealth v. Slifer, 25 Pa. 23 : " But the acts of public officers, where the rights of the public require it, should be construed with liberality. There is always a presumption that they are in accordance with the law. The presumption can be repelled only by clear evidence of illegality." See Danville Hospital v. Bellefonte Boro. Overseers, 163 Pa. 175. Whilst this rule, as here stated, applies only to the discharge of official acts within the limit of the official authority in civil cases, it seems to us to bear, with even greater force, in favor of an officer who, in the discharge of duty or of a supposed duty, acts within the limits prescribed by an act of assembly, or in general for the public good.

The defendant in question was a sworn officer of the law. He was permitted, under certain circumstances, upon a state forestry reservation or any lands adjacent thereto, to shoot and kill a dog. In the present instance an employee of the commissioner of forestry, who is ex officio a game warden, kills a dog without a master, and three miles from his master's residence. There is testimony showing that the defendant had heard of the character of this dog as a deer dog. Although the defendant saw a fox track, the testimony is that the dog was not following that but going in a different direction. The defendant admits that he shot the dog. Does the law, under those circumstances, imply malice ? The rule applying to the killing of the person, or to the use of a deadly weapon, was applied by the court in this case. In Smith v. Com., 12 W. N. C. 196, it was held that A, while a passenger in a railway car filled with people, in a spirit of frolic discharged a pistol, intending to shoot the load into the floor of the car, and thereby cause a temporary fright among the passengers. Without any intent on A's part the ball from the pistol entered the foot of the prosecutor, inflicting a severe wound. At the time of the discharge the pistol was held downward, A standing in the aisle, and the prosecutor and other persons standing behind him, in close proximity to him. On the trial of A for the above offense, upon indictment alleging assault : Held, that under the circumstances, defendant's act being recklessly and willfully done (without the slightest justification or excuse) the law of itself would imply malice.

This, although quoted in support of the position taken by the court, has no application and no analogy to the present case. Here is a public sworn officer acting, if the conditions are present, within the line of his official duty. Is he not entitled to the presumption that the conditions which are prescribed by the law are present, so as to make his act legal rather than that the law raises a presumption from the mere fact of the killing of the dog that it is willfully and maliciously done? The court below placed the burden of disproving malice upon the defendant, and left it to the jury to say whether or not his case was made out. We think he should have been allowed to start with the presumption in his favor, and that the commonwealth should have been compelled to show, by affirmative proof, every ingredient entering into the misdemeanor charged in the indictment, under the Act of April 24, 1903, P. L. 296. We are not to be understood as intimating that there was no evidence in the case from which the jury might have inferred malice, but it was for them to make the inference from the fact, as presented in the evidence, and not from the mere fact of the killing of the dog. In view of the conclusion which we have reached on this branch of the case, it is not necessary to discuss the remaining assignments of error.

Judgment reversed and a new venire awarded.