## Milliken v. Taylor et al., Commissioners

*Earl V. Compton,* for plaintiff.
*Walter Sohn,* for defendants.

WICKERSHAM, J., October 2, 1935.—The plaintiff in this action seeks to recover from the County of Dauphin certain sums for services rendered by Paul R. Zerby, a special deputy sheriff, and to Mrs. George N. Barnes for the rent of an automobile for the transportation of deputies, which bills the defendants refuse to pay. He therefore prays for a writ of alternative mandamus, which was ordered by the court on September 6, 1935.

The return of the county commissioners, defendants, after briefly stating the facts, alleges they are ready and willing to pay all lawful, reasonable and necessary wages and salaries of deputy sheriffs and special deputy sheriffs of Dauphin County, and the lawful, reasonable, and necessary expenses incurred in the conduct of the sheriff's office, but in view of the two claimants to the office of sheriff and two sets of deputy sheriffs claiming to have the legal right to perform the duties of their respective offices, the defendants are advised and therefore so aver

that they should pay no salaries or expenses aforesaid until a judicial determination is had as to who is legally entitled to the office of sheriff, for the reason that the salary and emoluments of public office attach to the office itself and not to the individual discharging the duties of the office except as he is an officer de jure.

The plaintiff demurred to the defendants' return.

## Facts

The facts in this case are not disputed and are, briefly stated, as follows:

1. George N. Barnes was elected Sheriff of the County of Dauphin at the municipal election held on November 3, 1931, and subsequently qualified and was commissioned as such sheriff for the term of four years beginning the first Monday of January 1932, and ending the first Monday of January 1936, and did assume the duties of said office.

2. The said George N. Barnes, exercising the duties of Sheriff of the County of Dauphin aforesaid, died on August 22, 1935, before the expiration of the term for which he was elected.

3. The plaintiff, Howard E. Milliken, as Coroner of the County of Dauphin, aforesaid, and as required by law, did on August 23, 1935, file in the office of the recorder of deeds in and for said county recognizance and bond, respectively, in the sum of $60,000, with proper surety, which bond was approved by two of the judges of this court, and is now of record in the recorder's office in Commission Book R, volume 1, page 203, and Form Book O, volume 1, page 230.

4. On August 23, 1935, the plaintiff, Howard E. Milliken, took his oath of office to qualify him as coroner to execute the office of sheriff and to perform all things thereunto pertaining, which oath was filed in the office of the Prothonotary of Dauphin County, and a recognizance has also been duly filed in the office of the Secretary of the Commonwealth of Pennsylvania. The said Howard

E. Milliken, as coroner, and as required by law, did thereupon take the oath of said office of sheriff and did thereupon take over the said office of sheriff and proceed to execute the duties thereof, and at the time of the filing of the petition in this case was still in possession of the said office and still executing the duties thereof.

5. In the conduct of the business of said office the plaintiff employed Paul R. Zerby as a special deputy for the time, and the reasonable value of said services of Paul R. Zerby was $20. The said bill was presented to the defendants who refused to pay the same for the reason that the right of the plaintiff to execute the office and appoint deputies was in question.

6. On August 29, 1935, Cloyd E. Wilson was appointed Sheriff of Dauphin County by the Governor of Pennsylvania, and a commission was issued to him which was recorded August 30, 1935, in Commission Book R, page 207, the appointment to compute from August 29, 1935. The said Cloyd E. Wilson filed his bond on August 30, 1935, with the Prothonotary of Dauphin County, in the sum of $60,000, took the oath of office on August 30, 1935, before William M. Hargest, President Judge, which oath is also recorded in the book and page aforesaid, and notified the plaintiff of said appointment, that he had complied with the law, and requested that the office of sheriff be surrendered by the plaintiff to him, which the plaintiff refused to do.

7. The said Cloyd E. Wilson proceeded by quo warranto to have said plaintiff, Howard E. Milliken, ousted from said office of Sheriff of Dauphin County, whereupon, on September 18, 1935, this court made an order ousting this plaintiff from the said office.

### Discussion

It is contended by counsel for the plaintiff that the plaintiff, Dr. Milliken, was an officer de jure from August 23, 1935, at least until August 29th, and that there-

after until his right to occupy the office was judicially determined by this court he was a de facto officer.

The General County Law of May 2, 1929, P. L. 1278, sec. 204, provides as follows:

"If any sheriff shall be legally removed from his office, or shall die before expiration of the term for which he was commissioned, the coroner of the county shall execute the office of sheriff and perform all things thereunto appertaining until another sheriff is commissioned and notice thereof is given to such coroner."

Section 182 of The General County Law provides:

"Every sheriff, whether elected or appointed to fill a vacancy, before he is commissioned or executes any of the duties of his office, shall enter into a recognizance and become bound in a bond, with at least two sufficient sureties, in the sums and manner hereafter mentioned."

The form of the recognizance is provided in the section, and it is further provided that it shall be acknowledged before the recorder of deeds. The form of sheriff's bond is provided in section 183 of The General County Law.

We are therefore of opinion that before Sheriff Wilson, in the instant case, could perform any duties he was required to file the recognizance, his oath of office and his bond. This we find was not done until August 30th. It therefore follows that Sheriff Wilson was not qualified to assume the office of sheriff prior to said date of August 30th, and until that date it appears very clear to us that the plaintiff was executing the office of sheriff as an officer de jure.

As we have before stated, the plaintiff's contention is that until the legal question was determined by this court in the pending proceedings in quo warranto in which Sheriff Wilson is plaintiff and Dr. Milliken, the plaintiff in this proceeding, is defendant, he was acting as an officer de facto.

In Coyle v. The Commonwealth, 104 Pa. 117, 130, the issue was whether a judge, elected and commissioned in a county having less than 40,000 inhabitants, was a judge

de facto with the right to preside at the trial of Coyle, charged with murder. It was said by Mr. Justice Clark, writing the opinion of the Supreme Court:

"A judge de facto assumes the exercise of a part of the prerogative of sovereignty, and the legality of that assumption is open to the attack of the sovereign power alone. If the question may be raised by one private suitor it may be raised by all, and the administration of justice would under such circumstances prove a failure. It is not denied that Judge McLean was a judge de facto, and if so he is a judge de jure as to all parties, except the Commonwealth. The attorney-general representing the sovereignty of the state, by a writ of quo warranto, might properly present this constitutional question for our consideration, but it cannot come before us from any other source, or in any other form."

In Columbus Township Road, 57 Pa. Superior Ct. 516, the question involved was whether, after report of viewers, appointed from the county board of viewers, has been filed and confirmed nisi, the county commissioners may object that the view is void because one of the viewers was a notary public and another was a referee in bankruptcy. It was held that until removed by proper proceedings the viewers are de facto officers, and their public acts are valid even if they were in fact disqualified. President Judge Rice, writing the opinion of the Superior Court (page 519), stated the law relating to the authority of de facto officers, after quoting from the acts relating to the appointment of viewers, as follows:

"The effect of the two provisions taken together is to enable the court to determine the facts summarily and to appoint another in the place of the one found to be disqualified, without formal proceedings for the latter's removal. But until this is done the persons appointed and acting are to be regarded as officers de facto. The general principle of the common law of England, as well as of this commonwealth, is, that the acts of such persons are valid where they concern the public or the rights of

third persons who have an interest in the act done; and this rule has been adopted to prevent a failure of justice: Keyser v. M'Kissan, 2 Rawle, 139. Speaking of the rule enunciated and applied in the earlier case of Riddle v. Bedford county, 7 S. & R. 386, Justice Rogers said: 'The reason given for the rule is most satisfactory: "That the act of an officer de facto, where it is for his own benefit, is void; because he shall not take advantage of his own want of title, which he must be conusant of; but where it is for the benefit of strangers, or the public, who are presumed to be ignorant of such defect of title, it is good:" Cro. Eliz. 699; Andrew's Rep. 163'. Thus, in Com., ex rel. Bowman v. Slifer, 25 Pa. 23, it was held that the relator was not strictly an officer de jure, and therefore was not entitled to mandamus for his salary for the period during which he performed the duties of his office without having given the legal security. 'He was merely the officer de facto.' And the court added: 'His acts are good so far as others are concerned.' The principle has been applied in a multitude of cases and in a great variety of circumstances." [Citing cases.]

See King v. Philadelphia County, 154 Pa. 160, opinion of Mr. Justice Green, beginning at page 165, in which many authorities are cited and affirmed, the principle seeming to be, as stated by Justice Rogers in Keyser v. M'Kissan, supra, that "The rule which governs the case is, that the commissioners, who appointed the treasurer, were officers *de facto*, since they came into their office, by colour of title". Applying that to the instant case, Dr. Milliken, the plaintiff, came into office under color of title as provided in The General County Law. It seems therefore a well-settled principle of law the acts of such person are valid when they concern the public or the rights of third persons when they have an interest in the acts done.

See also Gregg Twp. v. Jamison, 55 Pa. 468, in which it is held:

"An officer *de facto* is a person who is such by color

of election, though ineligible, or though the office was not vacant", citing M'Gargell v. The Hazleton Coal Co., 4 W. & S. 424, where Lord Ellenborough is said to define an officer de facto to be one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law. See opinion of Agnew, J., beginning at the bottom of page 471 (55 Pa.).

Again in Commonwealth, ex rel., v. Snyder, 294 Pa. 555, the same doctrine was announced and affirmed. See the third syllabus, where it is said:

"The acts of de facto public officers, holding by color of title, whether or not entitled de jure, are good so far as respects the public, but void when done for their own benefit."

Quoting from the opinion of Mr. Justice Simpson on page 559, we find the following:

"From at least as early as 1828 (Keyser v. M'Kissan, 2 Rawle 139) to as late as 1926 (Solar Electric Co. v. Pub. Serv. Com., 88 Pa. Superior Ct. 495, 498) the appellate courts of this Commonwealth have held steadily to the rule that 'the acts of public officers de facto, coming in by color of title, [whether or not entitled de jure], are good so far as respects the public, but void when for their own benefit'; and it is equally well settled that attacks upon the right of such incumbents to serve, must be made by the Commonwealth, in a direct proceeding for that purpose, and cannot be made collaterally: [citing authorities]. Here, the commissioner, whose vote was objected to, was, admittedly, an officer de facto, holding under color of title, and, up to the time he voted for respondent, no direct attack had been made on his right to serve as commissioner. 'Confusion worse confounded' would necessarily result from any other rule than as above stated; for, if the officer was a sole incumbent, none of his acts could be sustained, and this would be so, also, if he were one of several and his vote was necessary to make a majority. Consequently, before any one could safely rely on the acts of a public officer under such cir-

cumstances, an examination would have to be made regarding his citizenship, his residence, his payment of taxes, etc., etc., and the inquirer would have to take the risk of whatever conclusion might be reached on each and all of these matters."

. To the same effect see Krickbaum's Contested Election, 221 Pa. 521, in which case Mr. Justice Potter, writing the opinion of the Supreme Court, quotes as authority the case of State v. Oates, 86 Wis. 634, as follows (p. 527) :

"Within the rule that a de facto officer is one who is in possession of an office and discharging its duties under color of authority, by 'color of authority' is meant authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer."

This learned justice also quotes from Hamlin v. Kassafer, 15 Ore. 456, as follows:

"It may be said that 'color of right' which constitutes one an officer de facto may consist in an election or appointment, or in holding over after the expiration, of one's term".

See also Commonwealth v. McCombs, 56 Pa. 436; Clark v. The Commonwealth, 29 Pa. 129; and a very interesting discussion of the law relating to de facto officers will be found in the opinion of Judge Staake in Wood v. Civil Service Commrs. et al., 26 Dist. R. 250, beginning at page 266. See also Jordan v. Washington & Canonsburg Ry. Co., 25 Pa. Superior Ct. 564.

From these authorities, and others to which reference might be made, we are clearly of opinion that from August 30, 1935, to September 18, 1935, at which time this court ousted the plaintiff, Dr. Milliken, from acting as sheriff, he was an officer (sheriff) de facto. Learned counsel were of opinion that his right to hold said office was in doubt and that the matter should be litigated and determined by this court. Those proceedings have now terminated, Dr. Milliken has been ousted from further performing the duties of sheriff and the matter, so far

as this court is concerned, is set at rest. But during the pendency of the quo warranto proceedings we think Dr. Milliken was justified in continuing as coroner to execute the office of sheriff. Being an officer de facto he would not be entitled to any emolument for himself, but deputies appointed by him and other expenses made necessary by reason of his execution of the office of sheriff should, we think, be paid by the County of Dauphin. We think the authorities from which we have quoted sustain this conclusion.. We think that while he was not entitled to compensation, his acts were good so far as others were concerned: Commonwealth, ex rel., v. Slifer, 25 Pa. 23, referring particularly to the closing opinion of Chief Justice Lewis (p. 31) ; County of Luzerne v. Trimmer, 95 Pa. 97, referring to the opinion of Mr. Justice Mercur (p. 100).

We are of opinion, therefore, that the demurrer to the defendants' return must be sustained and that the writ of alternative mandamus issued in the instant case should be made peremptory.

And now, October 2, 1935, it is ordered, adjudged and decreed that the demurrer to the defendants' return be and the same is hereby sustained, and the writ of alternative mandamus issued by this court directed to M. Harvey Taylor, James E. Lentz and J. Douglas M. Royal, Dauphin County Commissioners, to show cause why they should not pay the bill of Paul R. Zerby, as special deputy sheriff, in the sum of $20, and the bill of Mrs. George N. Barnes for the hire of her automobile for the use of the sheriff's office, in the sum of $18.40, and pay all other reasonable and necessary wages and salaries of deputy sheriffs and special deputy sheriffs, and reasonable and necessary expenses incurred in the conduct of the sheriff's office, is hereby made peremptory.

From Homer L. Kreider, Harrisburg.